**SMALDINO, d.b.a. Smaldino Heating & Air Conditioning, Appellee,**

v.

**LARSICK, Appellant.**

[Cite as *Smaldino v. Larsick* (1993), 90 Ohio App.3d 691.]

Court of Appeals of Ohio,
Trumbull County.

No. 92–T–4824.

Decided Sept. 30, 1993.

James L. Messenger, for appellee.

*Tammie Riley Jones,* for appellant.

NADER, Judge.

This is an appeal from the decision of the Girard Municipal Court, Trumbull County, granting judgment in favor of plaintiff-appellee on its contractual claim seeking payment for the installation of a furnace, and against defendant-appellant on her counterclaims alleging breach of contract, negligence, and violations of the Home Solicitation Sales Act and Consumer Sales Practices Act.

Appellee is and has been engaged in the business of heating and air conditioning for approximately forty years. His son and employee, Michael, has twenty years' experience in the business. The trial court determined that appellee and his son qualify as experts in their field.

Appellant is elderly and suffers from a physical illness which has left her bedridden for the last ten years. She requires full-time private care.

In the early morning of January 17, 1992, the thirty-two-year-old furnace in appellant's home ceased functioning. The temperature outside was very low and the home quickly lost heat. The housekeeper attempted to contact five or six furnace services, but was unsuccessful until she reached appellee at about 3:00 a.m. Appellee agreed to send Michael Smaldino to her house immediately.

Michael inspected the furnace and initially determined that a new blower motor was required. Appellant authorized the repair. While dissembling the blower section to effectuate the repair, Michael discovered a hole "the size of a fist" in the heating chamber of the furnace. It is undisputed that at this point it would have been illegal and unsafe to restart the furnace after repairing only the blower motor because of the danger of carbon monoxide leaking into the house.

Michael advised appellant of this condition and advised her that the installation of a new furnace was required. The trial court found that an agreement was made whereby appellee was to install a similar new furnace for a price of $1,895.

Michael began the removal of the old furnace. Appellee and another worker arrived after 8:00 a.m. with the new furnace. Appellee worked for several hours before leaving. The worker remained for a total of eight hours assisting Michael. Michael worked continuously for a total of ten hours until the installation was complete and the house was heated.

Appellee returned one or two days later. He inspected the job and replaced the thermostat. He offered to return at a later date to "balance" the heating system to complete the job. At this time, appellant tendered full payment, but appellee refused, informing her that he would make out a bill and give it to her when he returned.

Difficulties subsequently arose between appellee and appellant's daughter-in-law, Norma Larsick. Mrs. Larsick expressed dissatisfaction with the work, and at one point offered appellee $1,200 in full satisfaction of the debt on appellant's behalf. Appellee never returned to balance the system and appellant never tendered full payment a second time.

Appellee brought suit on March 31, 1992. The trial was held without a jury on September 17, 1992. Appellant presented two expert witnesses. Both witnesses testified the installation of the new furnace by appellee was performed in a professional and workmanlike manner. However, they opined that the new furnace, although 125,000 BTU like the replaced furnace, was too large for the house given the increased efficiency of the newer model. These experts testified that the inappropriately large unit, although safe, would cause the furnace to cycle rapidly, resulting in cold and hot spots in the house. Michael Smaldino also indicated that the new furnace might be too large, but testified that "she asked for what she [previously] had." The trial court accepted appellee's testimony as expert opinion, and found that the new furnace was a proper model for appellant's home.

The trial court rendered a judgment in favor of appellee, and relieved appellee of specific performance as to the balancing, which was found to be a part of the original agreement. The cost of this service was determined to be $180, which amount was deducted from the $1,895 contract price.

Appellant appeals this judgment, and presents two assignments of error:

"1. The trial court erred in holding that the Home Solicitation Sales Act, Ohio Revised Code Section 1345.21 *et seq.* does not apply and rendering judgment for appellee on the first cause of appellant's counterclaim.

"2. The trial court erred in granting judgment for appellee on the second, third and fourth counts of appellant's counterclaim seeking damages under the Consumer Sales Protection Act, breach of contract and negligence because said judgment is contrary to law and against the manifest weight of the evidence."

R.C. 1345.21(A) defines a "home solicitation sale" as "a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a residence of the buyer, *including solicitations in response to or following an invitation by the buyer,* and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. * * * " (Emphasis added.)

The transaction at issue clearly falls under this definition. However, the trial court held that the exceptions found in R.C. 1345.21(A)(2), (5), and (6) were

applicable, thereby excluding the transaction from the provisions of the Act. Appellant claims error in each of these findings.

■ R.C. 1345.21(A)(2) excludes transactions in which:

"The transaction was conducted and consummated entirely by mail or by telephone if initiated by the buyer, and without any other contact between the seller or his representative prior to the delivery of goods or performance of the service."

It is evident from the record that the transaction was consummated at appellant's home. The trial court erred to the extent it relied upon this exception.

■ R.C. 1345.21(A)(5) excludes transactions in which:

"The buyer initiates the contact between the parties, the goods or services are needed to meet a bona fide immediate personal emergency of the buyer which will jeopardize the welfare, health, or safety of natural persons, or endanger property which the buyer owns or for which he is responsible, and the buyer furnishes the seller with a separate, dated, and signed statement in the buyer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within three business days."

There is no dispute that the instant case presented an emergency situation. However, there is no evidence of any statement as described by the statute. The trial court also erred to the extent it relied upon this exception.

■ R.C. 1345.21(A)(6) excludes transactions in which:

"The buyer has initiated the contact between the parties and specifically requested the seller to visit his home for purpose of repairing or performing maintenance upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer *additional services or goods* other than *replacement parts necessarily used* in performing the maintenance or in making the repairs, the sale of those additional goods or services does not fall within this exclusion." (Emphasis added.)

Appellant's old furnace was no longer in production when the transaction occurred, but it was possible that a replacement heating chamber could have been obtained. However, there would have been no way to determine the extent of time required to locate a chamber and have it shipped to appellant's home. Further, it is uncontested that the cost of the replacement chamber on the thirty-two-year-old furnace plus the new blower motor would have been equal to, if not exceeded, the cost of the new furnace.

The foregoing facts and the exigency of the situation convince this court that the installation of a new furnace was both reasonable and appropriate. The suggested use of electric space heaters as a temporary measure until the parts for the old furnace were obtained was an inadequate and dangerous alternative. The failure of Michael Smaldino to discuss this "option" with appellant at the time does not alter this result.

We find the installation of the new furnace to be a necessary repair, and not an additional repair or service. Accordingly, the trial court did not err in declaring this exception to apply.

As the Act does not apply to the instant transaction, appellant's first assignment of error is without merit.

Appellant's initial argument in her second assignment of error presents four bases upon which appellee's actions are claimed to violate the Consumer Sales Practices Act.

■ First, appellant argues that a violation of the Home Solicitation Sales Act is a deceptive act and practice in violation of the Consumer Sales Practices Act. R.C. 1345.28. Second, appellant argues in her brief that "appellee's representations that the furnace had to be replaced, when, in fact, it was capable of repair, was violative of O.R.C. 1345.02(B)(7) as well as OAC 109:4–3–05(C)(8)." We have previously discussed the propriety of appellee's decision to replace the entire furnace and have found that the Home Solicitation Sales Act does not apply to this case. Appellant's arguments, in support of her first two bases, fail because the replacement was in fact needed.

■ Third, appellant claims there was a violation of R.C. 1345.02(B)(10). This provision declares an act or practice of a supplier in representing the following to be deceptive:

"That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

Appellee left a warranty card with appellant after completion of the installation. There is no evidence that a warranty does not exist. Appellant bases its assertion on the fact that appellee did not fill in the model number or serial number on the card. We find no false representation, hence no violation of R.C. 1345.02(B)(10).

■ Fourth, appellant claims there was a violation of R.C. 1345.02(B)(1). This provision declares to be deceptive a representation "[t]hat the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have."

The underlying basis for appellant's contention is that the new furnace is too large for her home. Michael Smaldino and appellant never discussed the precise characteristics of the furnace to be installed. In her trial deposition, appellant states that she "presumed he [Michael] was going to put the same size furnace that I had, I didn't ask him and he didn't tell me." Although both furnaces were 125,000 BTU, the newer furnace has a higher efficiency rating, resulting in a more powerful furnace. Appellant claims the furnace is too powerful, and does not have the "performance characteristics" agreed to between the parties.

Quoting *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286, 287, this court has previously found that:

" '[T]he place to look to determine the presence of a deception is in the state of mind of the consumer, and not at the intent of the supplier. Thus, if the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive.' " *D & K Roofing, Inc. v. Pleso* (1991), 77 Ohio App.3d 181, 184, 601 N.E.2d 561, 563; see, also, *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1, 608 N.E.2d 796.

The trial court found that the proper furnace had been installed in appellant's home. Unless this finding is against the manifest weight of the evidence, appellant's argument fails.

Appellee was deemed qualified by the trial court to testify as an expert in furnace installation. Appellee testified at trial that in his opinion the new furnace was the proper size for appellant's house. Appellee based his decision upon the size of the previous furnace, and upon the need for additional "push" due to the family room behind the garage. He further indicated that any cold or hot spots being experienced in the home would be remedied by the balancing of the system.

The Ohio Supreme Court has held:

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis v. Kelly* (1875), 27 Ohio St. 567; *State, ex rel. Shady Acres Nursing Home, Inc., v. Rhodes* (1983), 7 Ohio St.3d 7 [7 OBR 318, 455 N.E.2d 489]. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]; *State, ex rel. Shady Acres Nursing Home, Inc., supra.*" *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73–74, 10 OBR 361, 362, 461 N.E.2d 901, 903.

Additionally, the court has held:

"It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony." *In re Lieberman* (1955), 163 Ohio St. 35, 38, 56 O.O. 23, 24, 125 N.E.2d 328, 330.

There is some competent, credible evidence to support the trial court's finding, and we may not substitute our own judgment for that of the trial court's. Cf. *D & K Roofing, Inc. v. Pleso* (Mar. 26, 1993), Trumbull App. No. 92–T–4760, unreported, 1993 WL 129868.

Appellant presents three arguments based upon contract law. The first asserts that "[a]ppellee breached the warranty of fitness for a particular purpose by failing to install an appropriately sized unit," and "[t]he court's finding that the proper furnace was installed is against the manifest weight of the evidence." This argument has been addressed and rejected.

Appellant next argues that the trial court erred in not awarding damages due to appellee's failure to fully perform under the contract by not balancing the system. However, the trial court deducted $180 from the award to appellee, this amount being calculated at six hours time to balance the furnace, multiplied by a $30–per-hour rate. Thus, damages were awarded.

Additionally, we find that appellee substantially performed under the contract between the parties, and that appellee's conduct comported with standards of good faith and fair dealing, especially considering his initial refusal to accept the check tendered by appellant, and the offer by appellant's daughter-in-law to pay no more than $1,200. See *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 583 N.E.2d 1056, and *Kersh v. Montgomery Developmental Ctr.* (1987), 35 Ohio App.3d 61, 519 N.E.2d 665, adopting Restatement of the Law 2d, Contracts (1981) 237, Section 241.

Appellant argues that when appellee initially refused payment, appellant's satisfaction became a condition of the contract, and that since she was not fully satisfied with appellee's performance she was relieved of her obligation to make payment under the contract.

Subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary. *Software Clearing House*, 66 Ohio App.3d at 172, 583 N.E.2d at 1061. A gratuitous oral agreement to modify a prior contract is binding if it is acted upon by the parties and if a refusal to enforce the modification would result in a fraud or injury to the promisee. See *id.* at 171, 583 N.E.2d at 1060; Restatement 2d, Contracts, *supra*, Section 89 (the modification of an executory contract is binding "to the extent that justice requires enforcement in view of the material change of position in reliance on the promise.") On the ground that there has been no such

material change of position, appellant's argument fails. Furthermore, the trial court found persuasive appellee's testimony that the balancing of the system would remedy the continuing difficulties experienced by appellant.

Appellant's final argument is that the trial court erred in not finding appellee to be negligent in his selection of the unit to be installed in appellant's home. Given our previous discussion of the trial court's findings on this issue, we reject this argument.

Based upon the foregoing, appellant's second assignment of error is without merit.

Accordingly, the trial court's judgment is affirmed.

*Judgment affirmed.*

FORD, P.J., and CHRISTLEY, J., concur.