OPINION
{¶ 1} Defendant-appellant, Jimmie Foister, appeals a judgment of the Warren County Court, ordering him to pay $12,175, along with interest and court costs, to plaintiff-appellee, Quadtek, Inc., with respect to appellee's breach of contract and unjust enrichment claims.
 {¶ 2} In 1994, the parties entered into a written contract, wherein appellee agreed "to remove and dispose of three underground storage tanks" on appellant's property in exchange for appellant's agreeing to pay him $7,100 plus additional, unspecified costs if contaminants were present. Appellee agreed to perform the work in accordance with the Bureau of Underground Storage Tank Regulations ("BUSTR") and Ohio Environmental Protection Agency regulations. Specifically, appellee was obligated to "file permit, perform environmental workup, do soil tests on tank cavity, stockpiles [sic] soil, and along any burried [sic] lines[,] * * * purge tank of liquids, remove sludge, ventilate, and run L.E.L. S [sic] for the state fir [sic] marshal, prepare the B.U.S.T.R. site featuring scoring system and checklist and prepare and file the closure with the state." The contract provided that if "contamination is present[,]" there would be additional charges, including a $65 per ton fee for "contaminated soil disposal." The contract also contained a provision stating that "backfill" was "not included." Appellant was required under the terms of the contract to make a $2,000 down payment on the $7,100 contract price and to pay the "balance upon completion." The contract also contained a provision that stated:
 {¶ 3} "Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate."
 {¶ 4} Appellee proceeded to remove the underground storage tanks and test the surrounding soil; after doing so, it discovered that the soil was contaminated. Appellee proposed to appellant that rather than have the contaminated soil hauled away to a landfill site at $65 per ton as called for under the terms of their contract, they "landfarm" the soil, instead. This procedure involved spreading out the contaminated soil on a sheet of plastic over a certain area of appellant's land, and then planting thistle or grass in the contaminated soil to speed the degradation of its contaminants. Appellant responded to appellee's landfarming proposal by telling him, "that's fine we can do that." Appellant even assisted appellee in landfarming the contaminated soil. Appellee subsequently conducted numerous inspections and soil tests to monitor the degradation of the soil's contaminants. Appellee also hauled in about 350 tons of crushed concrete to fill in the excavated site, at $3 per ton. At one point, appellant asked appellee to test a well on his property for contamination, which appellant did.
 {¶ 5} Under the terms of the parties' contract, appellee was obligated to file a "closure report" with the state regarding the steps taken to ameliorate the contaminants created by the underground storage tanks. When the time came to file this report, however, a dispute arose between the parties over the costs associated with the additional work of cleaning up the contamination. As a result of this dispute, appellee refused to file the closure report with the state because appellant "said he wasn't going to pay me[.]" With the statutory deadline for filing the closure report approaching, appellant hired Mike Luessn of ATC Associates to draft the closure report, which Luessn submitted to BUSTR in February 1999. In May 2000, BUSTR issued to appellant a NFA (no further action) letter, thereby indicating that appellant's property was sufficiently in compliance with all applicable regulations. Upon its attorney's advice, appellee eventually submitted a closure report of its own.
 {¶ 6} In August 1999, appellee filed a complaint against appellant, arguing that appellant breached their contract, or alternatively, was unjustly enriched to appellee's detriment. Appellee acknowledged that appellant had paid it $6,000 on the contract, but it argued that appellant still owed it an additional $8,150 for the work that it performed as a result of the contaminants it found in appellee's soil. In October 1999, appellant filed an answer and counterclaim, denying appellee's allegations that he had breached the terms of their contract or was unjustly enriched at appellee's expense, and arguing that appellee had breached the terms of their agreement by, among other things, failing to file a complete and timely closure report. Appellant also claimed that appellee failed to perform the agreed upon services in "a reasonable and workmanlike manner." The matter was referred to a magistrate.
 {¶ 7} A hearing was held on appellee's claims and appellant's counterclaims on June 13, 2001. On August 22, 2001, the magistrate issued a decision in the matter that stated in relevant part as follows:
 {¶ 8} "The court views this matter as one governed by the express terms of the parties' written contract, recognizing that some additional work was contemplated by the parties if certain contingencies were met, although no price term was agreed to with respect to backfill. The court also notes as a threshold matter that [appellee] agreed to perform the contract in exchange for [appellant's] payment of $2,000 on the contract and his promise to pay the balance upon completion of [appellee's] work. It appears that at some point the [appellant] withdrew his promise to pay the balance, or refused a present demand to pay the balance, and that [appellee] therefore refused to complete [its] work. Without reference to which party was the first to breach the contract, the court is disinclined to treat the unpaid work [appellee] did complete as forfeit. Material to deciding this case is whether the surcharges for well analysis, bank financing analysis, contaminated soil disposal, contaminated soil treatment, and backfill are alterations or deviations from specifications contained or contemplated in the contract, and if so, whether they involve extra costs.
 {¶ 9} "The surcharges for testing and backfill total $1,525, which the court finds reasonable. The original contract called for hauling away contaminated soil at $65 per ton. As a deviation from that specification, the parties agreed to landfarm the soil at $28 per ton. The court notes that this is a deviation, but not one involving extra costs to those contemplated in the contract. Consequently, the lack of a written change order will not defeat [appellee's] prayer for compensation for disposal. The cost of the excavation and testing operation was $5,050, which the court finds reasonable. The water well testing and financing report were not contemplated in the original contract, and the court finds that they are changes or `extras' without written change orders. The court awards no further compensation for those items.
 {¶ 10} "The court finds that [appellee] did not complete some work agreed to, which was subsequently completed by a third party at the cost to [appellant] of $1,500. This third party, Mike Luesson [sic, Luessn] of J.T. Express [sic, ATC Associates],[1] testified that the site and the closure are clean, as is also established by BUSTR's `no further action' letter, and that the landfarmed soil is continuing to degrade as expected.
 {¶ 11} "Accordingly, the court grants judgment to [appellee] in the amount of $12,175, with interest at the rate of 10% from August 22, 2001, and the costs of this action."
 {¶ 12} On August 31, 2001, appellant filed objections to the magistrate's decision. On January 4, 2002, appellant filed a supplemental memorandum in support of his objections, arguing, among other things, that the magistrate had failed to give him credit for the $6,000 that he had already paid appellee on the contract. On August 5, 2004, the trial court issued a decision and entry, overruling appellant's objections to the magistrate's decision and adopting the decision as its own.
 {¶ 13} Appellant now appeals from the trial court's decision, raising two assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT ERRED IN GRANTING JUDGMENT FOR THE APPELLEE IN THE AMOUNT OF $12,175."
 {¶ 16} Appellant presents five arguments in support of this assignment of error. First, he argues that even assuming that the magistrate's decision was otherwise correct, the magistrate erred by finding that he owed appellee $12,175. Appellant contends that, at the very least, the magistrate erred by failing to give him credit for the $6,000 that the magistrate, herself, found that he had already paid towards the initial contract price of $7,100. We agree with this argument.
 {¶ 17} It appears that the magistrate inadvertently failed to give appellant credit for the $6,000 he had already paid towards the contract price. This amount includes the $2,000 down payment he made at the time the parties signed their contract in 1994, as well as the $4,000 payment that appellant made while the work was in progress. Accordingly, the trial court's judgment regarding the amount appellant owes appellee will be modified from $12,175 to $6,175.
 {¶ 18} In his second argument, appellant asserts that the trial court erred in permitting appellee to recover for the costs of the landfarming operations and the backfill, which, appellant asserts, involved "extra costs," but which were not performed pursuant to "written orders," as required by the parties' contract. As to the landfarming operation, appellant contends that because that procedure was an "alteration or deviation" from the specifications in the parties' contract that involved "extra costs," it could be executed only upon a written order, under the terms of the contract. We disagree with this argument.
 {¶ 19} A review of the parties' testimony given at the hearing supports a finding that the parties agreed to a modification of the contract's terms regarding the contaminated soil. "Subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." Smaldino v. Larsick (1993),90 Ohio App.3d 691, 698. Here, the parties agreed to use a less costly procedure to deal with the contamination problem, i.e., the landfarming procedure, which cost $28 per ton, in lieu of hauling away the contaminated soil at $65 per ton, as originally provided for in the contract. The modification to the parties' contract was permissible. Id. at 698. Furthermore, the fact that the modification was not written did not conflict with the "extra costs/written orders" provision in the contract because the modification did not involve extra costs; there was evidence to show that the costs of hauling the contaminated soil away as provided for in the contract would have been $11,700, whereas landfarming the contaminated soil only cost $5,050.
 {¶ 20} However, as to the costs of the backfill, we conclude that this did amount to an "alteration or deviation * * * involving extra costs" and, therefore, under the terms of the contract, this modification could be "executed only upon written orders." Because there was no written order modifying the contractual provision that "backfill" was "not included," appellee should not have been allowed to recover the costs of the backfill under the terms of the contract.
 {¶ 21} Appellee does not dispute that the backfill constituted an extra cost and, thus, that it cannot recover the costs of the backfill pursuant to the terms of the contract. However, appellee asserts that it should be allowed to recover the costs of the backfill under the theory of unjust enrichment. We disagree with this argument.
 {¶ 22} "Unjust enrichment occurs when one party confers some benefit upon another without receiving just compensation for the reasonable value of the services rendered. [Footnote omitted.] Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment, particularly when the express agreement contains a provision governing the allegedly inequitable conduct of the other party. [Footnote omitted.]"Sammarco v. Anthem Ins. Cos., Inc. (1998), 131 Ohio App.3d 544,557.
 {¶ 23} Appellee argues that because the costs of backfill were expressly excluded under the terms of the contract, it should be permitted to recover under an unjust enrichment theory. We disagree with this argument. The parties' contract lists the specific terms of their agreement. Underneath these terms, the contract states, "Backfill not included." At the bottom of the contract is the provision that "[a]ny alteration or deviation from above specifications involving extra costs, will be executed only upon written orders[.]" In this case, the parties' "express agreement contains a provision governing the allegedly inequitable conduct of the other party." Sammarco,131 Ohio App.3d at 557; the contract provides that backfill is not included and that any alteration or deviation from this provision must be by written order. Hence, appellee was not permitted to bring a claim for unjust enrichment to evade that clear, express contractual provision. Id.
 {¶ 24} In light of the foregoing, the magistrate erred by awarding appellee the costs of the backfill, which amounted to $1,075. Accordingly, the trial court's award to appellee, which we have already reduced to $6,175, is further reduced by excluding the $1,075 costs of the backfill, to $5,100.
 {¶ 25} In his third argument, appellant asserts that the trial court erred in allowing appellee to recover on his breach of contract claim because appellee, itself, failed to comply with the terms of the contract, since it breached its duty to file a timely and complete closure report with the state. We disagree with this argument.
 {¶ 26} The magistrate acknowledged in her decision that appellee did not file a complete closure report with the state, as it had agreed to do, and that appellant had to hire a third party to file the closure report. As a result, the magistrate properly awarded appellant a setoff of $1,500 for this defect in appellant's performance. Generally, "substantial compliance will support a recovery of the contract price less allowance for defects in performance or damages for failure to strictly comply with the contract." Hansel v. Creative Concrete MasonryConstr. Co., 148 Ohio App.3d 53, 57, 2002-Ohio-198. Here, appellee substantially complied with its obligations under the contract, and the magistrate properly offset appellee's award by the amount it cost appellant to hire a third party to file the closure report.
 {¶ 27} In his fourth argument, appellant asserts that the trial court and magistrate erred in allowing appellee to recover the costs of the backfill under a theory of unjust enrichment. However, we have already addressed this argument in our discussion of appellant's second argument, where we found that appellee was not entitled to recover the costs of the backfill under an unjust enrichment theory and reduced appellee's award accordingly.
 {¶ 28} In his fifth argument, appellant argues that appellee failed to provide sufficient evidence to prove that he performed the landfarming and backfilling operations that he claims to have performed. However, we have already disallowed appellee's recovery for the costs of the backfill. Furthermore, a review of the testimony shows that there was sufficient evidence presented sented to support the magistrate's determination that the cost of the landfarming operations performed pursuant to the parties' modification of their contract was reasonable. Appellant also challenges appellee's charging $450 for obtaining a permit for the landfarming operation, arguing that the costs for permits was already included in the original contract price or was an "extra" for which there needed to be a written order. Appellant further asserts that appellee never obtained the permit, in any event. We disagree with these arguments. The $450 permit was for the landfarming operation, which we have already concluded was performed pursuant to a legitimate modification of the parties' agreement. Furthermore, appellee testified that while he never received an "official document" with respect to the permit, he did receive a "verbal go ahead on the thing."
 {¶ 29} Appellant's first assignment of error is sustained to the extent indicated; the trial court's judgment awarding appellee $12,175 is reduced to $5,100, for the reasons stated herein.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "THE TRIAL COURT ERRED IN NOT GRANTING JUDGMENT FOR THE APPELLANT."
 {¶ 32} Appellant argues that he was entitled to $1,500, or at least an offset of that amount, for the cost he incurred by having to hire a third party to complete and file the closure report with the state. However, a review of the magistrate's decision shows appellant was, in fact, given a $1,500 offset for this reason. In fact, appellant acknowledged this very fact in an earlier part of his appellate brief.
 {¶ 33} Appellant's second assignment of error is overruled.
 {¶ 34} The trial court's judgment awarding appellee $12,175 plus interest and court costs is hereby modified to $5,100 plus interest and court costs; the trial court's judgment, as modified, is affirmed.
Young and Bressler, JJ., concur.
[1] As previously indicated, Luessn is from ATC Associates, not J.T. Express. J.T. Express is the name of appellant's trucking company.