DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from a judgment of the Toledo Municipal Court, appellant, MedCorp, Inc. ("MedCorp"), asserts the following assignments of error:
 {¶ 2} "The trial court erred in finding that the plaintiff/appellee did not breach the contract prior to the termination of the relationship by defendant appellant.[sic]"
 {¶ 3} "The trial court erred in finding that the contract was not modified or abandoned by the plaintiff/appellee prior to the termination of the relationship by the defendant appellant.[sic]"
 {¶ 4} "The court relied on testimony that was without foundation, was hearsay and was stricken from the record."
 {¶ 5} Appellee, Buckeye Telesystem ("Buckeye"), is a public utility that provides telecommunication services to businesses in northwest Ohio and southeast Michigan. MedCorp is an ambulance service that operates in a number of Ohio counties and responds to emergency ("911") calls. As a regulated public utility, Buckeye was required to submit a "tariff," or set of guidelines to the Public Utilities Commission ("PUCO"). The tariff approved by PUCO for the operation of Buckeye contains a provision relieving Buckeye of any responsibility for "the installation, operation, or maintenance of any Customer-provided communications equipment." The tariff also reads, in pertinent part:
 {¶ 6} "Cancellation of Service by the Customer. If a Customer terminates services before the completion of the term for any reason whatsoever other than service interruption, Customer agrees to pay to Company the following sums which shall become due and owing as the effective date of the cancellation or termination (A) all Non-recurring Charges reasonably expended by the Company to establish service to Customer, plus (B) any disconnection, early cancellation, or termination charges reasonably incurred and paid to third parties by Company, plus (C) 65% of all Recurring Charges specified in the applicable Service Order tariff for the balance of the then-current terms."
 {¶ 7} In June 2001, Buckeye and MedCorp entered into a contract under which Buckeye agreed to provide, for a fee, telecommunication services to MedCorp for a period of 36 months. The contract entered into by the parties incorporated the language set forth above. Initially, the communication service provided to MedCorp by Buckeye was by means of POTS (Plain Old Telephone System) copper lines. During the fall of 2001, MedCorp purchased new in-house communications equipment from Toshiba.
 {¶ 8} In the spring of 2002, the service provided by Buckeye switched to ISDN, or prime rate interface, which is a line "that provides multiple channels for dial tone on it that has advanced communications signaling that talks to a private phone system differently than a business line or analog trunk." Having prime rate interface is "the equivalent of bringing in 23 or 24 telephone lines." The parties signed an addendum to the original contract that reflected the change in the type of telecommunications service.
 {¶ 9} It is undisputed that after the system became "fully operational," MedCorp began experiencing a number of "dropped calls." A "dropped call" occurs when it suddenly ends at any point in a conversation. According to MedCorp, the number of dropped calls ranged from as much as 50 per day to, after Buckeye's attempts to correct the problem, eight to ten dropped calls per day.
 {¶ 10} Brian Kolin, a field service technician for Sonit, a company servicing the Toshiba telephone system, attributed the larger number of dropped calls to a "mismatch" between the ISDN lines that Buckeye supplied and the Toshiba equipment. On the other hand, the last time that a Buckeye representative spoke with a MedCorp service person, Buckeye informed that individual that the problem was caused by MedCorp's equipment, i.e., the Toshiba telephone system.
 {¶ 11} Additionally, Ronald G. Anderson, the Central Office Supervisor for Buckeye, testified that in April 2002, he performed some tests and determined that the Buckeye ISDN line was "working fine" and that the dropped call problem was caused by "the Toshiba equipment." According to Anderson, he sent e-mails containing his results to MedCorp and to Sonit, but, and despite the fact that Anderson asked Sonit to inform Toshiba of his findings, he never received any response.[1] Anderson also noted that SBC uses the same type of "switch" running the same generic program as Buckeye.
 {¶ 12} Sometime during June 2002, MedCorp personnel made a conference call to David Huey, the President of Block Communications, the parent company of Buckeye. After these parties relayed their complaints concerning the service that Buckeye was providing to MedCorp, Huey allegedly stated that if MedCorp did not like that service, MedCorp could take its business to SBC Ameritech ("SBC"), its former telecommunications provider, or could seek another provider.
 {¶ 13} In the summer of 2002, MedCorp began negotiations with SBC, in order to transfer their telecommunications service to that company. Almost a year later, on May 23, 2003, MedCorp entered into a contract with SBC for telecommunication services and disconnected from Buckeye's telecommunication services. MedCorp made no payments to Buckeye after May 8, 2003. The record reveals that MedCorp experienced dropped calls for a period of weeks or months after returning its business to SBC. The difficulty was rectified only after a conference call with Toshiba to discuss the problem.
 {¶ 14} On April 20, 2004, Buckeye filed a complaint in the Toledo Municipal Court. Buckeye asserted that it fully performed under a 36 month written contract and that MedCorp breached the contract. Buckeye therefore requested an award of $8,378.18 in termination charges and 65 percent of recurring monthly charges of $991.50 per month for a period of 13 months. MedCorp filed an answer and raised, as defenses: (1) failure or want of consideration; (2) Buckeye's failure to fully perform on the parties' written contract; (3) the termination clause in the written contract was without consideration, excessive and had no relationship to actual damages and was a penalty; (4) Buckeye terminated the contract because it could not meet its contractual obligations; and (5) Buckeye's telecommunication system failed repeatedly and was substandard. After a trial to the bench, the court below found in favor of Buckeye and awarded it $10,327.82, plus court costs and post judgment interest. This timely appeal followed.
 {¶ 15} In its first assignment of error, MedCorp contends that the trial court erred by placing the burden of proof for breach of contract on MedCorp. At the close of trial, the trial judge stated that the issue in the cause before him was "who breached the contract." He then noted that Buckeye carried the burden of proof as to the existence of the contract and any breach by MedCorp. The judge further stated that MedCorp had the burden of proof on its affirmative defense of "Buckeye Telesystem breached first by failing to provide the proper [telecommunication] service."
 {¶ 16} On the question of who breached the contract first, the trial court found that the resolution of this issue rested upon "provisioning." "Provisioning" is a term of art that was used at trial to describe the ability/inability to communicate between Buckeye's "prime line" and the equipment, or "hardware" sold to MedCorp by Toshiba. The municipal court concluded that there was insufficient evidence offered below to determine "whose responsibility was the failure of provisioning." Because the trial judge decided that MedCorp had the burden of proof on this issue, and failed to carry that burden, he found in favor of Buckeye. MedCorp argues, however, that demonstrating that Buckeye met its provisioning obligations, was an "essential part of proving performance" and the burden of proof on this issue was, therefore, on Buckeye. Buckeye, on the other hand, urges that any oral comments made by the trial judge involving burdens of proof are not part of his written judgment entry and thus cannot be used as the basis for a meritorious appeal.
 {¶ 17} It is well-established that a trial court speaks only through its journal and not by oral pronouncement. Schenley v.Kauth (1953), 160 Ohio St. 109, 111. Thus, an appellate court will not ordinarily review the substantive or procedural content of a courtroom colloquy which was not carried over into the judgment entry. Snouffer v. Snouffer (1993), 87 Ohio App.3d 89,91; Howard v. Wills (1991), 77 Ohio App.3d 133, 140 at fn. 5. Nevertheless, in the case sub judice, the trial court ordered both parties to file findings of fact and conclusions of law. After Buckeye and MedCorp complied with this order, the municipal court adopted the findings of fact and conclusions of law filed by Buckeye as its judgment. The following relevant conclusions of law are, therefore, part of the municipal court's judgment:
 {¶ 18} "4. To avoid liability for plaintiff's contract damages, defendant must prove by a preponderance of the evidence that there was a prior material breach by plaintiff, or that plaintiff waived or otherwise modified its contract terms, releasing defendant from its contractual obligations to plaintiff, or that plaintiff's damages constitute an unenforceable penalty. The defendant asserting an affirmative defense has the burden of proof to establish a defense.Matchmaker Internat'l. Inc. v. Long (1995),100 Ohio App.3d 406.
 {¶ 19} "5. Defendant has failed to prove that plaintiff's service, equipment, or facilities were the cause of defendant's `dropped call' problem, or that plaintiff was otherwise at fault.
 {¶ 20} "6. Defendant has failed to prove that plaintiff materially breached any duty owed to the defendant under the terms of the contract between the parties or under plaintiff's tariff authority.
 {¶ 21} A reading of the foregoing reveals that Conclusions of Law Nos. 4, 5, and 6, as adopted by the trial court, did incorporate some of the judge's comments on burdens of proof made at the close of trial. Accordingly, we shall address the alleged error raised by appellant.
 {¶ 22} The burden is on the party seeking to enforce a contract to prove, by a preponderance of the evidence, all of the elements for a claim of breach of contract. Cooper Pachell v.Haslage (2001), 142 Ohio App. 3d 704, 707. These elements are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Doner v.Snapp (1994), 98 Ohio App.3d 597, 600. Even if a valid contract is proven to exist, the defendant may raise an affirmative defense; the burden of proving that affirmative defense is on the defendant. MatchMaker Internat'l., 100 Ohio App.3d at 408. However, when the plaintiff is suing upon a contract and alleges performance that is denied by the defendant, "it is incumbent upon the plaintiff to prove performance, at least substantially."Enterprise Roofing Sheet Metal Co. v. Howard Investment Corp.
(1957), 105 Ohio App. 502, 503 (Citations omitted.). See, also,Steinlage v. Gabria (June 28, 1988), 2d Dist. No. 10747; CastoProperty Management, Inc. v. Venetta, (Feb. 14, 1985), 10th Dist. No. 83-AP-799, citing Thomas v. Matthews (1916),94 Ohio St. 32.
 {¶ 23} As applied to the present case, we conclude that, although language denying that Buckeye failed to perform the contracted for services is set forth in not only MedCorp's denials but also as a defense in its answer, MedCorp was actually simply denying the assertions of substantial performance made by Buckeye. Thus, the burden of proof was on Buckeye to show, by a preponderance of the evidence, that it substantially performed under the terms of the contract. Consequently, the trial court did err in placing the burden of proof on the question of performance on MedCorp.
 {¶ 24} We conclude, nonetheless, that such error was harmless because Buckeye did establish substantial performance under the terms of the parties' contract. Therefore, even though the trial court improperly allocated the burden of proof in reaching its decision, it did not affect a substantial right of the parties. See Civ.R. 61; Chieffo v. YSD Industries, Inc.,157 Ohio App.3d 182, 2004-Ohio-2481, at ¶ 24.
 {¶ 25} In particular, Buckeye made several attempts to determine the cause of the dropped calls and did eliminate a number of such calls. Furthermore, under the written terms of the contract between Buckeye and MedCorp, Buckeye was not responsible for the operation of any "customer provided" communications equipment. Although MedCorp offered testimony to the effect that the problem was caused by Buckeye's services, Buckeye also offered evidence that the problem was caused by Toshiba's equipment. In a bench trial, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, the trial judge could and did place greater credence in the testimony offered by Buckeye on the issue of the cause of dropped calls; specifically, that the dropped calls were caused by the customer provided Toshiba equipment. As a result, Buckeye demonstrated, by a preponderance of the evidence, that it performed its duties under the contract and that it was MedCorp who breached the contract by switching telecommunication providers prior to the end of the 36 month contract period. Appellant's first assignment of error is found not well-taken.
 {¶ 26} In its second assignment of error, MedCorp maintains that David Huey's statement made during the June 2002 conference call coupled with the subsequent actions of the parties constituted either a modification of their contract or abandonment of their contract.
 {¶ 27} In its judgment entry, the trial court held in its Conclusions of Law Nos. 12 and 13 that: (1) MedCorp failed to prove that legal consideration was given to Buckeye in exchange for the modification of MedCorp's contractual obligations; and (2) the telephone conversation with Huey did not constitute a modification of the contract between the parties or a waiver the termination charge.
 {¶ 28} The municipal court's Findings of Fact Nos. 38 through 41 set forth the predicate facts underlying its Conclusions of Law Nos. 12 and 13. Those facts acknowledge the June 2002 telephone call in which Huey stated that if MedCorp was unhappy with Buckeye's service, it could switch telecommunication services to another provider. These facts also recognize, however, that Huey never stated that MedCorp was released from its contractual obligation to Buckeye and that the parties never entered into an exchange of promises during the telephone conference.
 {¶ 29} Generally, a written contract may be orally modified only if the new agreement is based upon new and separate legal consideration or, if gratuitous, is so acted upon by the parties that refusing to enforce the oral modifications would result in fraud or injury to the promisee. Smaldino v. Larsick (1993),90 Ohio App.3d 691, 697-698, citing Software Clearing House, Inc.v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 172; Restatement of the Law 2d, Contracts (1981) 237, Section 241.
 {¶ 30} The subsequent acts cited by MedCorp are Buckeye's alleged cessation of provisioning, monitoring, and maintenance services to MedCorp. Appellant relies on the testimony of Michael Kelly, MedCorp's Director of Communications. A reading of the relevant portions of Kelly's testimony does not support MedCorp's allegations. Kelly testified that after the conversation with Huey, MedCorp stopped complaining to Buckeye because Buckeye would just tell them to reset MedCorp's telephone system or reset the "prime." Kelly also acknowledged that Buckeye told MedCorp that the problem was caused by MedCorp's Toshiba equipment and that there was nothing that Buckeye could do to correct that problem. Kelly's testimony also reveals that, after the Huey conversation, MedCorp focused on negotiations with SBC. These unilateral subsequent acts on the part of MedCorp are insufficient, even when joined with Huey's comment, to sustain MedCorp's allegation of oral modification of the parties' contract.
 {¶ 31} The second issue raised in this assignment of error involves the question of whether Buckeye abandoned the parties' contract. Abandonment is an affirmative defense. See Civ.R. 8(C). Failure to present an affirmative defense before pleading, affirmatively in a responsive pleading, or within an amended pleading, waives the defense. Civ.R. 8(C), 12(B), and 15; Millsv. Whitehouse Trucking Co. (1974), 40 Ohio St.2d 55. A review of the record in this cause discloses that MedCorp did not raise the affirmative defense of abandonment either in its answer or by means of an amended pleading. Furthermore, MedCorp did not address the question of abandonment in its trial brief, closing arguments, or proposed findings of fact and conclusions of law. Therefore, MedCorp waived this defense.
 {¶ 32} Moreover, "abandonment" is defined as "`the absolute unequivocal relinquishment of a right or status without regard to self or any other person. It is a virtual throwing away without regard as to who may take over or carry on. It is a total discarding of what existed or went before; and evidence thereof must be direct, affirmative or reasonably beget the exclusive inference of throwing away. * * * `". Kuhn v. Kleptz, 2d No. 20668, 2005-Ohio-4528, at ¶ 13, quoting Davis v. Suggs (1983),10 Ohio App.3d 50, 52. Here, there is no evidence in the record tending to show that Buckeye absolutely and unequivocally relinquished its rights under the parties' contract. To repeat, in April 2002, Buckeye informed MedCorp that the cause of its dropped call problem was the Toshiba equipment. Buckeye then continued to provide its telecommunications service to MedCorp until May 2003. It was MedCorp who stopped informing Buckeye of any dropped calls and turned to finding another telecommunications provider. Thus, for the foregoing reasons, MedCorp's second assignment of error is found not well-taken.
 {¶ 33} MedCorp's third and final assignment of error argues that the trial court erred in relying on the hearsay testimony of Lauren Parris, the former account manager for SBC, in finding that it was likely or more likely that the dropped calls experienced by MedCorp were the result of a malfunction in Toshiba's equipment rather than the result of a failure in Buckeye's "service, equipment or facilities." See Finding of Fact No. 51.
 {¶ 34} The three Findings of Fact preceding the disputed finding read:
 {¶ 35} "48. Despite switching its services to Ameritech/SBC in May 2003, defendant's `dropped call' problem persisted.
 {¶ 36} "49. There was a telephone conference between Ameritech/SBC and Toshiba concerning defendant's `dropped call' problem some time in late 2003.
 {¶ 37} "50. Following the Toshiba/SBC conference sometime between late 2003 and February 2004, defendant's `dropped call' problem was eliminated."
 {¶ 38} First, we note that there nothing in Finding of Fact No. 51 to show that the trial court relied solely on the testimony of Parris in making that finding. Second, the only portion of Parris' testimony that MedCorp objected to as hearsay was a statement that she made indicating that the dropped call problem was caused by "some settings that were on the Toshiba system that were a little bit off * * *." The court below sustained that objection, finding that Parris could testify that the problem was resolved, but could not testify as to the cause of the problem. With regard to Finding of Fact No. 48, three other witnesses; Michael Kelly, Brian Kolin, and Matthew Rychener; testified that the dropped calls continued after SBC became MedCorp's telecommunications provider. As to Finding of Fact No. 49, Parris could testify from her own knowledge that there was a conference between SBC and Toshiba in late 2003. Further, MedCorp did not object to this testimony on the basis of hearsay or any other evidentiary basis and, thereby, waived its right to raise the admission of this evidence as error on appeal. Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220, overruled on other grounds, Collins v. Sotka (1998),81 Ohio St.3d 506.
 {¶ 39} As for Finding of Fact No. 50, MedCorp's trial attorney expressly stated that Parris could testify "as to the problem being resolved." The trial court agreed. Thus, error, if any, with regard to Finding of Fact No. 50, was invited error, and MedCorp cannot take advantage of error which it invited or induced the court to make. Center Ridge Ganley, Inc. v. Stinn
(1987), 31 Ohio St.3d 310, 313. Finally, as noted infra, there is nothing in Finding of Fact No. 51 to indicate that it was premised solely on the testimony of Parris. It could also be based upon testimony provided by other witnesses, e.g., Anderson. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 40} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Singer, P.J. Skow, J. concur.
[1] A copy of the e-mail and attached test results, dated April 17, 2002, sent to MedCorp was offered at trial and showed that Anderson sent the e-mail to the wrong address. However, there is no evidence in the record of this cause tending to demonstrate that Toshiba did not receive Anderson's e-mail. Nevertheless, there was never any communication between Buckeye and Toshiba concerning the dropped calls.