In re NORTH MANDALAY INVEST-MENT GROUP, INC., Metco Real Estate and Insurance, Inc., Metco Holdings Inc., and Robert J. Metz, Debtors.

No. 8:05–bk–07020–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 9, 2008.

David W. Steen, David W. Steen, PA, Tampa, FL, for Debtors.

Theresa M. Boatner, Office of the United States Trustee, Tampa, FL, for U.S. Trustee.

### ORDER OVERRULING DEBTORS' OB-JECTION TO CLAIM OF FIFTH THIRD SECURITIES, INC.

(Doc. No. 348)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER before this Court, is actually the second chapter of a dispute between North Mandalay Investment Group, Inc. (NMIG), Metco Real Estate and Insurance Inc., Metco Holdings, Inc., and Robert J. Metz (collectively referred to as the Debtors), and Fifth Third Securities, Inc. (FTS).

The first chapter of the dispute involved a counter-claim filed by the Debtors coupled with their objection to a claim filed by FTS. Ordinarily, the objection is considered first, and the counter-claim is only considered if needed, after the objection is ruled on. In the present instance, this Court will consider the counter-claim first. The reason for bifurcation of the claim was because FTS challenged the right of the Debtors to assert their counter-claim by filing a Motion for Summary Judgment limited to the issue. After a conclusion of the final evidentiary hearing on the Objection to the Counter-claim filed by FTS, this Court entered its order on May 23, 2008, and ruled that the Debtors failed to establish the essential elements of their claims asserted in the counter-claim and dismissed the counter-claim with prejudice.

This left for consideration the Debtors' Objection to the Claim of FTS in the total amount of $267,184.98.

Before considering the merits of the Objection, a brief recap of the procedural background of the events preceding the filing of the claim under consideration should be helpful. On April 13, 2005, the Debtors filed their respective Petitions for Relief under Chapter 11 of the Bankruptcy Code, and the cases were subsequently consolidated. None of the Schedules filed by the Debtors listed FTS as a creditor, and consequently, FTS did not receive a notice during the entire proceeding of the Chapter 11 until the Plans submitted by the Debtors received a confirmation. The only item filed by the Debtors that indicated some transaction with FTS was a claim by the Debtors against FTS. On Schedule B.20, Metco Real Estate and Insurance, Inc., listed a claim against FTS for refund of fees paid by the Debtors in connection with the refinancing application. The Schedule valued the claim as unknown. The Disclosure Statement filed by the Debtors on December 5, 2005, described the financial difficulties of the Debtors with the Bluewater Project and indicated that the problems directly resulted in the bankruptcy filings. On January 13, 2006, the Court heard the testimony in support of the Plans submitted by the Debtors. After the testimony, the Court orally announced the Plans were confirmed, albeit the written order of confirmation was not actually entered until almost four months later, on May 9, 2006. In the interim, FTS, having learned of the pending bankruptcy case of the Debtors, filed a Motion and sought an order to determine that the claim attached to the Motion would be deemed a claim timely filed, even though it was filed on March 17, 2006, long after the original bar date fixed by this Court, which was September 1, 2005. Having been faced now with an allowable claim of $267,184.98, the Debtor filed an Objection to the Claim. The Debtors' Objection contends that:

(1) FTS breached a certain agreement which is the subject of the claim asserted by FTS, and such breach excuses all performance by the Debtors, including payment of any sums claimed to be owed to FTS by the Debtors;

(2) the Debtors do not owe any money to FTS because FTS did not provide any services of value as noted in the agreement;

(3) the letter agreement which is the basis of FTS's claim, indicates that the agreement was terminated or expired, and no obligation to pay any alleged amount survived such termination or expiration;

(4) the Debtors are entitled to a setoff of any amounts owed to the Debtors by FTS;

(5) many of the expenses sought by FTS were not reasonable or were not related to any legitimate expenditure or activity;

(6) The Debtors were fraudulently induced by FTS into entering the letter agreement; therefore, FTS is barred from recovery of any amount claimed;

(7) FTS breached its fiduciary duties owed to the Debtors, and therefore is barred from recovery;

(8) FTS intentionally waived any right it may have had to receive any additional compensation from the Debtors by terminating the letter agreement.

In defense, FTS basically denies all of the contentions set forth in the Objection, but particularly responded that the Debtors were free to terminate the FTS agreement at any time, but elected not to terminate the agreement until after June 11, 2004. In addition, FTS contended that the misrepresentation by Metz, one of the Debtors, of the level of site control impeded FTS's efforts to successfully secure financing for the Bluewater Project. And of

course, FTS contends that the Debtors failed to pay $250,000.00, the net sum that became due on June 11, 2004, on the date of maturity dictated by the Agreement.

In the post-trial submission, FTS contends that the terms of Section 2 of the Agreement are clear, unambiguous, and were not modified in writing or by actions of the parties. Moreover, parol evidence should not be considered to modify the unambiguous terms of the contract. FTS did not fraudulently induce the Debtors to enter into the Agreement with FTS. In addition, it is contended that no fiduciary duty or heightened fiduciary requirements existed between the parties. Lastly, FTS contends that it fully performed under the Agreement and the claim being challenged should be allowed in full, and the Objection should be overruled.

These are basically the facts relevant to the resolution of the validity of the objection asserted by the Debtors against the claim filed by FTS.

█ In order to have a binding agreement, there needs to be a meeting of the minds between the parties to the contract. Although there may be an appearance of mutual assent during contract formation, actual or imagined misinterpretation of express terms during the performance stage often necessitates resolution by judicial intervention. In the case at hand, the Debtors are claiming that there is compelling extrinsic evidence related to Phases of the project that would persuade this Court to disallow the claim of FTS.

Before considering the nuts and bolts of the Agreement, it is worthwhile to consider Metz's level of sophistication in transactions of this nature. Metz has owned and operated various income-producing properties in or around Clearwater his entire adult life (Trial Transcript pg. 360). Additionally, Metz has been involved in the commercial construction business ever since he was in high school (Trial Transcript pg. 361). In Metz's dealings as an owner and operator of these properties and in the commercial construction business, he entered into various contracts where services are provided and money is required to be paid by various parties (Trial Transcript pg. 361). With this in mind, Metz cannot be considered unsophisticated in agreements of this nature and should be reasonably expected to take precautionary measures in order to contractually protect himself.

The Agreement which is the basis for the Proof of Claim in essential terms provides as follows:

1. *Nature of Engagement–Financial Advisory Services.* FTS will provide the following services to NMIG:

   ● FTS will assist NMIG in identifying, evaluating and securing proposals for the Proposed Financing, to be submitted by institutional investors, government agencies, port authorities, financial institutions, quasi-debt agencies and private financing sources, and in negotiating the terms of such Proposed Financing.

   ● FTS will use its reasonable efforts to assist NMIG in evaluating the terms and sources of the Proposed Financing to provide a cost effective and competitive financing structure for the Development.

   ● FTS will provide such other financial advisory and consulting services, which may be reasonably requested by NMIG and which are incidental to the responsibilities specified above.

2. *Compensation. In consideration of FTS's services as set forth above, FTS shall receive, and NMIG shall pay, or cause to be paid to FTS:*

a. A cash payment equal to $100,000.00 (U.S. Dollars) upon execution of this Agreement.

b. An additional cash payment, equal to $250,000.00 (U.S. Dollars), on June 11, 2004.

5. *Term; Termination of Engagement. NMIG's execution of this Agreement will mark the commencement of FTS's engagement hereunder and shall expire on September 13, 2004 (such period being the "Engagement Period").*

The following are the events leading up to the execution of the Agreement between the Debtors and FTS. Prior to meeting with FTS, the Debtors had been working with W.G. Mills, Inc. (Mills), a construction company that has completed many projects in the State of Florida. Mills was assisting the Debtors in obtaining financing for the project, albeit unsuccessfully, with the intention of being hired as the builder once the funds were in order. During the preliminary negotiation phase with FTS, Mills acted as an undisclosed agent for the Debtors in that FTS was never informed that Mills was speaking on behalf of the Debtors or serving as their agent (Trial Transcript 99, 165–166). There was some discussion during the initial meetings between Mills and FTS regarding activities in furtherance of the Bluewater Project being completed in Phases (Trial Transcript pg. 124–126). Metz was not present for any discussion relating to the Phases and could not produce any documentation from FTS stating that payments by the Debtors to FTS would be conditioned upon the completion of the Phases (Trial Transcript pg. 410). With regard to taking precautionary measures, it is without dispute that Metz carefully reviewed the Agreement prior to finalization because he proposed that changes be made to specific sections within the document (Trial Transcript pg. 147). Having experience in the field underlying the Agreement, it is reasonable to expect that Metz would have demanded that FTS revise the Agreement to include language concerning the payment being conditioned on the completion of the Phases if that was what he actually bargained for.

█ In the case of *Shifrin v. Forest City Enterprises, Inc., et al.,* 1992 WL 12137589, *13 (Ohio 1992), the Court reasoned that "only where the language chosen by the parties is unclear or ambiguous is a court empowered to look outside the four corners of the document in an effort to discern the parties' intentions." The Agreement between the Debtors and FTS is undoubtedly clear and unambiguous, which would only support the decision to exclude the Debtors' extrinsic evidence.

█ In the case of *Fontbank, Inc. v. CompuServe, Inc.,* 138 Ohio App.3d 801, 742 N.E.2d 674, 678 (2000), the Court held that "a written contract will be presumed to be a complete integration of the parties' agreement." The Court went on to state that "this presumption is strongest where a written agreement contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding its subject matter." *Id.* at 678–79. The integration clause in Section 9 of the Agreement between the Debtors and FTS states as follows:

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof, and supersedes and cancels any prior communications, understandings, and agreements between the parties hereto.

By stating that the Agreement "sets forth the entire understanding," this clause strengthens the argument that the contract is fully integrated and not subject to

challenge by prior or contemporaneous evidence from outside of the document.

■ Section 9 of the Agreement also goes on to state the following:

This Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties.

In the case of *SMAldino v. Larsick*, 90 Ohio App.3d 691, 698, 630 N.E.2d 408 (1993), the Court held that "subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." In the Agreement between the Debtors and FTS, it is otherwise specified that it cannot be modified unless by written agreement signed by both parties. Since no document to that effect has been produced, the Agreement was not modified and should be enforced as is.

■ Section 5 of the Agreement states the following:

This Agreement may be terminated by NMIG or FTS at any time, with or without cause, upon written notice to the other party.

It has already been established that the provision for an additional cash payment of $250,000, due on June 11, 2004, was unambiguous. If the Debtors had terminated the Agreement prior to June 11, 2004, they would not have been responsible for paying FTS the $250,000 payment (Trial Transcript pg. 416). Instead of taking this route, the Debtors decided to terminate the Agreement approximately two months after the $250,000 payment to FTS was due (Trial Transcript pg. 169). This is another example of where Metz's experience in the industry should have reasonably caused him to understand his obligations under the Agreement and is

further support for allowing the claim of FTS.

■ Pursuant to Section 521 of the Bankruptcy Code, a debtor has a duty when filing to list all creditors (11 U.S.C. § 521). Since FTS was not scheduled as a creditor in the Debtors' Petition, they did not receive notice of the impending bankruptcy. It is without dispute that the Debtors were fully aware that FTS would possibly assert a claim based on the fact that prior to the commencement of the Chapter 11 case the attorney for FTS sent two demand letters requesting the payment of the balance due to FTS. Even with this awareness, FTS was still omitted during the scheduling process.

Having considered the record and the evidence presented in *toto*, this Court is satisfied that the Debtors have failed to meet the burden of proof in support of their objection. Therefore, the Debtor's Objection to Claim of FTS is not well taken, and should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Objection to Claim of Fifth Third Securities, Inc. (Doc. No. 348) be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DECREED that Fifth Third Securities, Inc.'s Claim No. 16 be, and the same is hereby, allowed as filed.